UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


United States of America

     v.                           Crim. No. 22-cr-088-01-LM
                                Opinion No. 2023 DNH 050 P

David Berard

**O R D E R**

David Berard is facing a single count of making a false statement in connection with the attempted acquisition of a firearm in violation of 18 U.S.C. § 922(a). In November 2022, the court found Berard not competent to stand trial and—as required by 18 U.S.C. § 4241(d)—committed him to the custody of the Attorney General for hospitalization for a period not to exceed four months at a facility equipped to provide treatment to determine whether Berard's competency could be restored. Due to a shortage of available beds, Berard was not transferred to a treatment facility until February 27, 2023, just over three months after the court ordered his hospitalization.

Berard moves to dismiss the indictment (doc. no. 43). He argues that the government's delay in transferring him violated his rights under 18 U.S.C. § 3161(c)(1) (the Speedy Trial Act) and 18 U.S.C. § 4241 (the competency statute).[1] The government objects. For the reasons explained below, the court finds that the government has not violated the Speedy Trial Act. The court further finds that the

---

[1] The name of the statute is the "Insanity Defense Reform Act." For simplicity, the court refers to it as the "competency statute."

government has not yet violated either § 4241(d)(1) or the court's commitment order (doc. nos. 32, 33) by exceeding the four-month duration for hospitalization of a committed defendant.  Due to a lack of resources and available bed space, the government failed to timely transport Berard to a suitable facility.  These circumstances, which interfere with Congress's intended use of § 4241(d), concern the court.  But dismissal is not the appropriate remedy, particularly where Berard is currently hospitalized and is undergoing a restoration evaluation.  Accordingly, and for the reasons that follow, the court denies Berard's motion to dismiss without prejudice.

## BACKGROUND

On June 30, 2022, Berard was arrested for making a false statement in connection with the attempted acquisition of a firearm, in violation of 18 U.S.C. § 922(a).  On July 21, 2022, the court (Johnstone, M.J.) held a bail hearing and ordered Berard detained.  The court found by clear and convincing evidence that "no condition or combination of conditions of release will reasonably assure the safety of any other person and the community" and, by a preponderance of the evidence, "that no condition or combination of conditions of release will reasonably assure the defendant's appearance as required."  Doc. no. 12 at 2.  As support for these findings, the court stated that, among other items, Berard had a history of violence or use of weapons; had a lack of stable employment and residence; had told law enforcement that laws do not apply to him; and had posted a threat in temporal proximity of a firearms purchase.  Id. at 2-3.

Berard was indicted on August 1, 2022.  On September 20, defense counsel asked the court to schedule a hearing to determine whether Berard was competent to stand trial.  The court held the hearing on November 22, and the following day (November 23), the court issued an order finding that Berard was "presently suffering from a mental disease or defect rendering him mentally incompetent to stand trial."  Doc. no. 32.  Pursuant to 18 U.S.C. § 4241(d), the court committed Berard to the custody of the Attorney General, ordering that he be hospitalized for "treatment in a suitable facility for a reasonable period of time, not to exceed four months, to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the proceedings to go forward."  Id.

In its order, the court instructed the director of the facility designated to treat Berard to file a preliminary status report addressing Berard's mental condition and any progress in restoring his competency by December 23 (one month after the court's order) and a final report addressing the same on or before March 23, 2023 (four months after the court's order).

No status report was filed with the court by December 23.  Instead, on December 27, the government moved to continue the court's deadline (for the initial status report) until February 21, 2023, stating that Berard had not yet been transferred from Strafford County House of Corrections (where he was being held pretrial) to a Bureau of Prisons ("BOP") facility for treatment.  The government represented that it expected the extended deadline would allow sufficient time for

Berard to be transferred and for the facility to provide an initial status report to the court. The court extended the deadline for the initial report until January 23, 2023.

On January 23, 2023, the government filed a second motion to continue the deadline for the initial status report to March 9. The government reported that Berard had not yet been transferred from Strafford County due to a shortage of beds in a suitable facility. The government further explained that Berard "had been escalated" on the waitlist for transfer and that BOP expected to transfer him to FMC Devens in late February. The court granted the government's motion "reluctantly," noting that Berard's transfer should have been placed on expedited status on November 23, 2022, the date of the court's original order committing Berard to the custody of the Attorney General.

On February 15, counsel for Berard filed a motion requesting a hearing on the first date available after March 24. Counsel explained his intention to seek dismissal of Berard's indictment on that date, which would be four months and one day after the court ordered Berard committed to the custody of the Attorney General for a competency restoration evaluation. The court granted the motion, agreeing to expedite a hearing on the issue once briefing on the forthcoming motion to dismiss was completed.

Meanwhile, Berard arrived at FMC Devens on February 27. The Warden of FMC Devens submitted a status report regarding Berard's progress on March 28. The letter reported that Berard's evaluation period would conclude on June 27 (four

months after his arrival at FMC Devens) and that a final report would be submitted
to the court within four weeks of that date.

On March 10, counsel for Berard filed this motion to dismiss his indictment.
The government objected.  The court held a status conference on April 4 and a
hearing on April 10.  Dr. Dia Boutwell, Chief of the BOP Psychological Evaluations
Section, testified on behalf of the government.  Dr. Boutwell testified that Berard
presented a difficult case in determining whether he could be restored to
competency.  Ultimately, the court set the matter for additional oral argument to be
held on April 25.

On April 18, the court held an in-chambers status conference to update the
parties on the court's progress in evaluating the issue presented by Berard's motion
to dismiss.  The same day, the court issued an order stating that "it would aid the
court's ruling on the pending motion to dismiss to obtain a better understanding of
Berard's current status in his competency restoration evaluation."  Order of April
18, 2023.  Thus, the court ordered the "director of the facility at which Berard is
hospitalized" to file by April 21 "a status update informing the court about the
progress of Berard's competency restoration evaluation.  In particular, the report
should address the director's current view of whether there exists a 'substantial
probability'—as opposed to certainty—that Berard may be returned to competency."
Id.

On April 20, the chief psychologist of FMC Devens, Dr. Diana Hamilton,
responded to the court's order by letter.  Dr. Hamilton stated that Berard's

evaluator, Dr. Miriam Kissin "is not available until April 25, 2023," and that it would be "irresponsible on our behalf for anyone other than Dr. Kissin to submit an update to the Court on this matter." Doc. no. 55. Dr. Hamilton wrote that "Dr. Kissin will submit a status report by the end of the business day on April 25, 2023." Id.

On April 25, the court held oral argument as scheduled. During the hearing, the court received a letter from Amy Boncher, FMC Devens's warden. The court and the parties reviewed Boncher's letter during a brief recess.

In her letter, Boncher stated that she was providing "an interim status report 60 days into the 120-day evaluation period." Boncher asserted that, at FMC Devens, Berard has "remained well adjusted." According to Boncher, Berard has "completed six of eight Competency Restoration groups," and he has been an "active participant" in them. He has "continued to meet with his restoration treatment team for continued treatment planning." On April 5, Berard "received an Incident Report." Boncher stated that, subsequently, Berard "was found competent" for purposes of "his participation in the disciplinary process . . . ."

Boncher also reported that Berard has been twice interviewed by his attending psychiatrist, and the psychiatrist had "[n]o diagnosis or recommendation for psychiatric treatment . . . ." Finally, Boncher told the court that "[f]ollowing completion of the final Competency Restoration Group meetings," Berard "will be reevaluated regarding his competency to stand trial." According to Boncher,

Berard's "evaluation period will end June 27, 2023, and a final written report will be submitted to the Court within four weeks of that date."

After the brief recess during oral argument, the court expressed concerns about the process being followed by the BOP and its refusal to answer the question posed by the court, i.e., whether there is a substantial probability that Berard can be <u>returned</u> to competency.  <u>See</u> doc. no. 57 (order outlining court's concerns about Warden Boncher's letter).

## DISCUSSION

Berard moves to dismiss the indictment on two grounds.  First, he argues that the government violated the Speedy Trial Act, 18 U.S.C. § 3161, by holding him at Strafford County for 96 days before transferring him to FMC Devens for his court-ordered competency restoration treatment.  Berard contends that under § 3161(h)(1)(F) a delay in transportation becomes presumptively unreasonable after 10 days, so the government's delay left him awaiting trial beyond the 70-day period allowed by the Act.  Second, and alternatively, he argues that the government violated his rights under 18 U.S.C. § 4241(d), which prohibits the government from holding defendants for a restorability determination any longer than four months.  Berard argues that the clock for such treatment started on November 23, the date the court committed him to the custody of the Attorney General, and that the statute required his release on or before March 23.  The government disagrees.  The parties filed supplemental briefs on April 13, and Berard filed a second

supplemental brief on April 24.  The court addresses both of Berard's arguments below.

I.      Speedy Trial Act (18 U.S.C. § 3161)

The Speedy Trial Act, as its name suggests, serves to protect the "shared interest of criminal defendants and the public in 'bringing criminal charges to the bar of justice as promptly as practicable.'"  United States v. Richardson, 421 F.3d 17, 29 (1st Cir. 2005) (quoting United States v. Hastings, 847 F.2d 920, 924 (1st Cir.1988)).  The Act provides that "[i]n any case in which a plea of not guilty is entered, the trial of a defendant . . . shall commence within seventy days" from the later of (1) "the filing date . . . of the information or indictment," or (2) the defendant's initial appearance before a judicial officer.  18 U.S.C. § 3161(c)(1). However, the Act does not impose a rigid 70-day deadline by which a trial must begin without regard for the reality that certain delays are unavoidable and some even necessary to protect the defendant's rights.  To account for such permissible delays, § 3161(h) enumerates certain events that are excludable from the calculation of the 70-day period.  See id. § 3161(h).

Several of the excludable events listed in § 3161(h) relate to a defendant's competency:

> (1) Any period of delay resulting from other proceedings concerning the defendant, including but not limited to—

(A)  delay resulting from any proceeding, including any
examinations, to determine the mental
competency or physical capacity of the defendant

. . .

(F)  delay resulting from transportation of any
defendant . . . to and from places of examination or
hospitalization, except that any time consumed in
excess of ten days from the date an order of
removal or an order directing such transportation,
and the defendant's arrival at the destination
shall be presumed to be unreasonable

. . .

(4)  Any period of delay resulting from the fact that the
defendant is mentally incompetent or physically
unable to stand trial.

Id.

A violation of the Act occurs only if, after subtracting excludable events, more than 70 days have elapsed between the commencement of the case and the defendant's filing a motion to dismiss for lack of a speedy trial.  United States v. Hood, 469 F.3d 7, 9 (1st Cir. 2006).  The remedy for a violation is dismissal of the indictment.  18 U.S.C. § 3162(a)(2).

Here, the period after the court's November 23 finding that Berard was incompetent to stand trial is excludable under § 3161(h)(4), regardless of the delay in transporting Berard to FMC Devens.  See United States v. Romero, 833 F.3d 1151, 1155-56 (9th Cir. 2016) (finding that § 3161(h)(1)(F) does not apply after a defendant is found not competent to stand trial); United States v. Pendleton, 665 Fed. Appx. 836, 839 (11th Cir. 2016) (same).  This conclusion is supported by the plain language of the statute, which states that "any" period of delay resulting from

9

a defendant's incompetence "shall" be excluded from the speedy trial calculation. It does not provide for any exceptions. Instead, once a court finds that "the defendant is mentally incompetent . . . to stand trial," any delay that results from that finding is excluded from the speedy trial calculation. And once an incompetence finding is made, the competency statute mandates a process that entails delay. See § 4241(d). Because that delay occurs as a result of the competency finding, it is excludable under § 3161(h).

This is so despite § 3161(h)(1)(F)'s presumptive limitation on the amount of time excludable for "delay resulting from transportation of any defendant . . . to and from places of examination or hospitalization . . ." Section 3161(h)(1)(F) does not apply to transportation delays where, as here, a defendant has already been found not competent to stand trial. Section 3161(h)(1)(F) is a subsection of § 3161(h)(1), which requires the exclusion of "[a]ny period of delay resulting from other proceedings concerning the defendant." (emphasis added). Thus, for any of § 3161(h)(1)'s exclusions to apply, the applicable delay must relate to a "proceeding." Here, after the court's finding that Berard was not competent, "all proceedings had necessarily been put on hold until [Berard's] competency was restored." Romero, 833 F.3d at 1155-56. Given that there were no pending proceedings after November 23, the plain language of § 3161(h)(1)(F) does not apply here.

However, "[e]ven if § 3161(h)(1)(F) does apply in the absence of a 'proceeding,' nothing in that provision suggests that it should trump the requirements of § 3161(h)(4)." Id. at 1156. In other words, even if Berard is correct that only 10 of

the 96 days during which he awaited transportation to FMC Devens are excludable under § 3161(h)(1)(F), the remaining 86 days would still be excludable under § 3161(h)(4).  See Pendleton, 665 Fed. Appx. at 839 ("Thus, if a defendant is mentally incompetent under § 3161(h)(4), that time is excludable even if there is also a transportation delay that is unreasonably long and thus not excludable under § 3161(h)(1)(F).").

Berard urges the court to adopt the reasoning of other courts which have found that unreasonable transportation delays are not excludable even after a finding of mental incompetence, because such delays do not "result[] from" mental incompetence, as required by § 3161(h)(4).  See United States v. Dellinger, 980 F. Supp. 2d 806, 812 (E.D. Mich. 2013); United States v. Sparks, 885 F. Supp. 2d 92, 100-01 (D.D.C. 2012).  The court is not persuaded by that reasoning.

The Supreme Court has held that exclusions under § 3161(h) are meant to apply "virtually as a matter of definition and irrespective of how a court may view [them] in a particular case."  See United States v. Tinklenberg, 563 U.S. 647, 654 (2011); see also Henderson v. United States, 476 U.S. 321, 330 (1986).  The provisions apply "irrespective of whether [they] actually cause[], or [are] expected to cause, delay in starting a trial."  Tinklenberg, 563 U.S. at 650.  Thus, inquiring into whether a delay resulted from a defendant's mental incompetence or a transportation delay would directly contradict the Court's instructions in Tinklenberg.  Such an approach would also render § 3161(h)'s exclusions "'significantly more difficult to administer,' and thus 'significantly hinder the

11

Speedy Trial Act's efforts to secure fair and efficient criminal trial proceedings.'"
Romero, 833 F.3d at 1155 (quoting Tinklenberg, 563 U.S. at 657).

For those reasons, the court finds that § 3161(h)(4) stops the Speedy Trial Act
clock after a finding of mental incompetence, regardless of any finding regarding the
actual cause of the delay in bringing the defendant to trial.

Applying that rule to the facts of this case, no violation of the Speedy Trial
Act occurred. The parties do not dispute that the Speedy Trial clock started on
August 1, 2022, when the indictment issued. They similarly do not dispute that the
clock paused on September 20, 2022, when defense counsel filed a motion to
determine whether Berard was competent to stand trial. Under § 3161(h)(4), the
clock has remained paused since the court found Berard incompetent. Thus, only 50
non-excludable days (August 1-September 20) have elapsed since proceedings
against Berard commenced. For these reasons, the government has not violated
Berard's rights under the Speedy Trial Act.

II.   Competency Statute (18 U.S.C. § 4241)

Berard next argues that the government violated the competency statute, 18
U.S.C. § 4241. This statute governs the procedure courts must follow in making
pre-trial competency determinations. Section 4241 reads in relevant part:

> **(d) Determination and disposition.**—If, after the
> hearing, the court finds by a preponderance of the
> evidence that the defendant is presently suffering from a
> mental disease or defect rendering him mentally
> incompetent to the extent that he is unable to understand
> the nature and consequences of the proceedings against

him or to assist properly in his defense, the court shall commit the defendant to the custody of the Attorney General. The Attorney General shall hospitalize the defendant for treatment in a suitable facility—

> **(1)** for such a reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the proceedings to go forward; and

> **(2)** for an additional reasonable period of time until—

>> **(A)** his mental condition is so improved that trial may proceed, if the court finds that there is a substantial probability that within such additional period of time he will attain the capacity to permit the proceedings to go forward; or

>> **(B)** the pending charges against him are disposed of according to law;

> whichever is earlier.

> If, at the end of the time period specified, it is determined that the defendant's mental condition has not so improved as to permit the proceedings to go forward, the defendant is subject to the provisions of sections 4246 and 4248.

18 U.S.C. § 4241(d).

Thus, under § 4241(d), after a court finds a defendant is not competent to stand trial, two things must happen. First, "the court shall commit the defendant to the custody of the Attorney General." Id. ("the committal sentence"). Second, "[t]he Attorney General shall hospitalize the defendant for treatment in a suitable facility [] for such a reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the

foreseeable future he will attain the capacity to permit the proceedings to go forward." Id. § 4241(d)(1) ("the hospitalization sentence").

Under § 4241(d)(2), the four-month period may be extended for "an additional reasonable period of time" under the circumstances outlined above in the statute. Id. § 4241(d)(2)(A)-(B).  If the defendant has not attained the capacity to proceed to trial "at the end of the time period specified," the defendant "is subject to" the civil commitment procedures established under § 4246 or § 4248.  Id. § 4241(d)(2).

Congress passed § 4241 as "part of a broad overhaul of the provisions governing pre-trial competency determinations" in response to the Supreme Court's holding in Jackson v. Indiana, 406 U.S. 715, 738 (1972).  United States v. Donnelly, 41 F.4th 1102, 1105 (9th Cir. 2022).  In Jackson, the court found that the Due Process Clause prohibits holding a criminal defendant "who is committed solely on account of his incapacity to proceed to trial" for longer than "the reasonable period of time necessary to determine whether there is a substantial probability that he will attain that capacity in the foreseeable future."  406 U.S. at 738.  Section 4241 "is self-evidently built upon Jackson."  United States v. Filippi, 211 F.3d 649, 652 (1st Cir. 2000).

A.    Section 4241(d)'s clock began when the government placed Berard in a suitable facility.

Here, the court finds that § 4241(d)'s four-month clock began on February 27, 2023, when the government hospitalized Berard in a suitable facility.  For that reason, the government has not yet violated § 4241(d)(1)'s four-month maximum time period.  See Donnelly, 41 F.4th at 1105.

The plain language of § 4241(d) compels this conclusion.  The statute makes clear that once a defendant is found not competent to stand trial, the court "shall" commit the defendant to the custody of the Attorney General.  Then, in the next sentence, it states that the Attorney General "shall" hospitalize the defendant for treatment for the reasonable period necessary to determine whether the defendant can be restored to competency.  That reasonable period of hospitalization is not to exceed four months.  Thus, the four-month maximum applies to hospitalization, not commitment.  Id. ("We think the text of the statute makes clear that the four-month time limit applies only to the period of hospitalization, and thus begins to run when the defendant has been hospitalized."); see also United States v. Magassouba, 544 F.3d 387, 412-13 (explaining that the four-month maximum period in § 4241(d) is set in terms of "hospitaliz[ing] the defendant for treatment in a suitable facility").  Because Berard has not been hospitalized for longer than four months, no violation of § 4241(d) has occurred in that regard.  See, e.g., United States v. Lee, No. 1:21-cr-20034, 2022 WL 18275882, at *4 (S.D. Fla. Dec. 27, 2022) (finding that "plain language" of § 4241(d) indicates that four-month time limit applies only to hospitalization), R&R adopted, 2023 WL 168755 (Jan. 12, 2023); United States v. Belgarde, No. 21-cr-58, 2022 WL 540932, at *4 (D.N.D. Feb. 23, 2022) (same); United States v. Jones, 2020 WL 7127321, at *2 (D. Mont. Dec. 4, 2020) (same); United States v. Carter, No. 17-cr-190, 2019 WL 9410160, at *1 (E.D. Wisc. Oct. 16, 2019) (same); United States v. Smith, 764 F. Supp. 2d 541, 545 (W.D.N.Y. 2011) (same); see also United States v. Bravo-Cuevas, No. 22-cr-76-PHX-DWL, 2022 WL

3042916, at *2 (D. Az. Oct. 19, 2022) (following Donnelly); United States v. Zapata-Herrera, No. 14-cr-3639-GPC, 2015 WL 4878319, at *1 (S.D. Cal. Aug. 14, 2015) (finding that § 4241 "does not set a limit on the amount of time that criminal defendants can be incarcerated while awaiting court-ordered competency services").

It is tempting to read the committal and hospitalization sentences together and find a textual basis for Berard's argument.[2]  See United States v. Carter, 583 F. Supp. 3d 94, 100-01 (D.D.C. 2022); Donnelly, 41 F.4th at 1108 (Watford, J., concurring in the judgment).  But the hospitalization sentence in § 4241(d)(1) is separate and distinct from the committal sentence.  And the four-month time limit refers back to the word "hospitalization" in that sentence.  The committal sentence contains no time frame.  While the court is sympathetic to Berard's argument that it only makes common sense to read the committal period as subsumed in the hospitalization time period, the plain text does not support that reading.  The court's role is to read the statute as it is written, not to rewrite it so that it makes more sense as a matter of public policy.

B.    The delay in placing Berard in a suitable facility does not require dismissal.

Alternatively, Berard contends that the more than three-month delay in transporting him to a suitable facility requires dismissal, even if the government has not yet violated § 4241(d) by exceeding the allowable duration for hospitalization.  The court is troubled by the pre-hospitalization delay but concludes that dismissal is not an appropriate remedy for that delay.

_____

[2] Indeed, this is how the court originally read the statute.

Section 4241(d) does not state how long the government may take to hospitalize a defendant.  In Donnelly, the Ninth Circuit suggested that there may be some implicit statutory limit on the time the government may take to hospitalize a committed defendant.  See 41 F.4th at 1105.  And, at a minimum, "due process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed."  Jackson, 406 U.S. at 738; Donnelly, 41 F.4th at 1106 (reasoning that the structure of § 4241(d) "might require a pre-hospitalization commitment period," but stating that "to abide by Jackson, the duration of the pre-hospitalization commitment period must be limited to the time reasonably required to accomplish those tasks").

This court, however, need not determine whether the government's delay in hospitalizing Berard violated Jackson, nor "whether the statute allows some amount of pre-hospitalization confinement . . . ."  See Donnelly, 41 F.4th at 1105.  Even assuming some violation occurred, "dismissal is not the appropriate remedy" for such violation.  Id. at 1106 (finding that government violated Jackson by failing to place the defendant in an appropriate facility for nearly six months after commitment but declining to order dismissal).

Unlike the Speedy Trial Act, the competency statute provides no basis to dismiss the indictment.  And, "[d]ismissal of an indictment on due process grounds is appropriate only in cases of flagrant prosecutorial misconduct or when government conduct is 'so grossly shocking and outrageous that it violates the universal sense of justice.'"  Carter, 2019 WL 9410160, at *2 (quoting Zapata-

Herrera, 2015 WL 4878319, at *2); United States v. Leusogi, 2022 WL 11154688, at

*3 (D. Utah Oct. 19, 2022) ("[T]he Court need not determine the precise scope of the

[competency statute] because dismissal is not appropriate at this time.  Dismissal of

an indictment is an extraordinary remedy, which the Supreme Court has

characterized as 'drastic,' and the Tenth Circuit has described as 'draconian.'");

Jones, 2020 WL 7127321, at *2 ("[E]ven upon finding a due process violation, the

appropriate remedy is not to dismiss the indictment."); see also Bravo-Cuevas, 2022

WL 3042916, at *2 (declining to dismiss where delay in transportation did not

exceed four months).[3]

Most courts to address the government's now-common failures in timely

placing committed defendants in suitable medical facilities have found that the

appropriate remedy is a directive that such defendants be placed in a facility

immediately or within a certain, short period of time.  In these circumstances, only

after the government has failed to comply with such an order do courts entertain

dismissal of the indictment.  See, e.g., Donnelly, 41 F.4th at 1105 (requiring

---

[3] The First Circuit's decision in United States v. Ecker, 78 F.3d 726, 731 (1st Cir. 1996), while not precisely on point, counsels against dismissing the indictment in this case.  The First Circuit observed that "[t]he statutory silence" in §§ 4241 and 4246 as to whether the court must dismiss an indictment after civil commitment under § 4246 left "little doubt" that Congress "intended to leave the decision about the disposition of pending charges to the case-by-case discretion of the prosecutors." Id. at 728.  In rejecting several arguments in favor of dismissing the indictment, the First Circuit emphasized the importance of the government's role in choosing whether and how to move forward with an indictment when a person has been found incompetent.  See id. at 729-30 ("Congress could plausibly have expected that a prosecutor bent on trying a committed person would file a motion under section 4241 for a new evaluation of competency."), id. at 730 ("[T]he government has discretion to solve the dilemma by dismissing the charges.").

defendant's timely transport to medical facility as remedy but leaving open the possibility that dismissal could be justified); United States v. Castrellon, 2023 WL 2330688, at *4 (D. Colo. Mar. 1, 2023) ("If Mr. Castrellon is not assigned to a suitable facility and beginning treatment by April 10, 2023, this Court, like the court in Donnelly, would then strongly entertain dismissing the indictment at that time."); Leusogi, 2022 WL 11154688, at *3 (ordering defendant's immediate transport to a facility for restoration proceedings and warning government that its failure to do so "will likely result in dismissal"), case dismissed, 2022 WL 16855426, at *4 (Nov. 10, 2022) (dismissing indictment after government failed to immediately transport the defendant to a facility for restoration proceedings).

In these circumstances, dismissal is not an appropriate remedy for the government's failure to timely hospitalize Berard.  While dismissal can be appropriate under limited circumstances akin to failure to prosecute, see United States v. Craigue, 557 F. Supp. 3d 339, 345-46 (D.N.H. 2021), violation of court orders, Leusogi, 2022 WL 16855426, at *4, or flagrant prosecutorial misconduct, Carter, 2019 WL 9410160, at *2, those facts are not present here.  To the contrary, the government attorneys involved in this case made all attempts to hospitalize Berard as quickly as they could, considering the resources the government and BOP have made available for this purpose.  See Carter, 2019 WL 9410160, at *2 (finding that delay in hospitalization "presumptively violate[d]" the defendant's "due process rights" under Jackson, but that "courts have rejected the argument that due process violations caused by systemic delays warrant the dismissal of the indictments").

19

Berard has already been hospitalized. Therefore, the government has provided the remedy – hospitalization – that courts most commonly order when the government has failed to timely transport a committed defendant to a hospital. And neither this court nor Berard has been able to identify any case where a court has dismissed an indictment for lack of a timely transport <u>after</u> the government has admitted the defendant to a suitable facility. Accordingly, the court finds that dismissal of the indictment is not an appropriate response at this juncture.[4]

## CONCLUSION

For these reasons, Berard's motion to dismiss (doc. no. 43) is denied without prejudice.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

May 1, 2023

cc:     Counsel of Record

---

[4] As the court explained in its April 27 order (doc. no. 57) regarding Warden Boncher's April 25, 2023 letter, the court now has doubts about whether the BOP properly began an evaluation of whether Berard can be restored to competency. In this order, the court only addresses the issues related to the duration of Berard's commitment and hospitalization on its face. In other words, for purposes of this order, the court will assume that the government complied with the court's competency order and the directives of the purpose of hospitalization under § 4241(d). The court does not address in this order what remedy, if any, may be appropriate if the government has violated the competency order and § 4241(d) either in how it has conducted Berard's hospitalization or by holding him for longer than was necessary to determine whether there is a substantial probability that he can be restored to competency.